# THEODORE W., BERTHA, AND CARRIE PAULSON v. W. A. FISK AND OTHERS.[1]

May 31, 1935.

Nos. 30,318, 30,319, 30,320, 30,322, 30,323, 30,324.

[1]Reported in 261 N. W. 182.

*Somsen & Dempsey* and *Flor & Reim,* for plaintiffs.
*Orr, Stark, Kidder & Freeman,* for defendant W. A. Fisk.
*Lauerman & Pfeiffer,* for defendant C. R. Finley.

HILTON, JUSTICE.

These appeals involve three actions for the recovery of damages because of personal injuries sustained in a motor vehicle accident. The three actions (brought respectively by Theodore W. Paulson, Bertha Paulson, and Carrie Paulson) were tried together, the plaintiff in each case obtaining a verdict against defendants Fisk and Finley. Defendant Mrs. Helmer Johnson having died before the trial, the case was dismissed as to her. Defendant Fisk appeals from the order in each action denying his motion for judgment notwithstanding the verdict or for a new trial. His claim is that there was no evidence of negligence on his part, that the verdict was not justified by the evidence, and that plaintiff Theodore Paulson was guilty of contributory negligence as a matter of law. Each plaintiff appeals from the order granting judgment notwithstanding the verdict in favor of Finley. The grounds thereof are hereinafter stated. The amounts of the verdicts are not here questioned; no errors are assigned as to the charge of the court or as to rulings on the admission or rejection of evidence.

There were involved in the accident four motor vehicles. The car conveying the plaintiffs was a model A 1928 Ford coach. It was owned and driven by plaintiff Theodore Paulson, and in it were the other two plaintiffs, Bertha Paulson, his wife, and Carrie Paulson, his mother. The Finley car was a Chevrolet 1930 coach. It was being driven by Mrs. Johnson with Finley's consent, and riding in it with Mrs. Johnson was Mrs. Finley. The Fisk vehicle, driven by his brother with his consent and in which were two passengers,

was an International tractor-trailer truck, consisting of a 7,100-pound tractor, 10 feet long, and a 7600-pound trailer, 34 feet long and 8 feet wide. The tractor and trailer were connected by a swivel joint in which was a kingpin. The fourth car was a model T Ford, driven by one Hansen. His wife was with him.

The accident occurred between 3:30 and 4:00 p. m. December 14, 1933, on a straight, level, paved highway (Minnesota trunk highway No. 7, U. S. highway No. 14). The paved portion of the highway was 20 feet wide with the customary black line in the center and having shoulders 12 feet wide, of which 10 feet of each were travelable. At the time of the accident it was somewhat cloudy and misty, but there was not sufficient mist to obscure the view to any extent, nor was the pavement slippery. After the accident it started to snow.

The Paulson car was proceeding eastward on its right side of the pavement. The other vehicles were proceeding westward. About a mile east of the scene of the accident the Hansen car passed the truck; about half a mile therefrom the Finley car passed the truck, then it attempted to pass the Hansen car, which was on its own side of the highway. At approximately the same time Paulson turned his car to the right so that its two right wheels were on the south shoulder. When the Paulson, Hansen, and Finley cars were abreast, the Finley car grazed the Hansen car, and the left rear part of the Finley car contacted the left rear portion of the Paulson car. Shortly after the contact between those three cars, Paulson's car became involved in a serious collision with the truck, which was following the Finley and Hansen cars. It was in that collision the injuries complained of were received. The foregoing are practically undisputed facts.

In both the Fisk and Finley cases the evidence most favorable to plaintiffs is to be adopted. In the former numerous witnesses placed the speed of the passenger cars when abreast at from 25 to 35 miles per hour. One witness for Fisk placed the speed of the Paulson car thereafter at 40 to 45 miles per hour; Paulson placed it at 30 miles. The driver of the truck stated that 250 feet from the place where the three cars contacted he was then going 35 miles

per hour; that he put on the brakes and either came to a stop or to about three miles an hour; that he was not certain whether he kept straight ahead or whether the tractor jackknifed a little to the left. Neither he nor either of his two passengers testified that there was an intentional attempt to turn the tractor to the left. It is conceded that the distance from the place where the passenger cars contacted to the place of the collision with the truck was not more than 75 to 100 feet. One witness for Fisk stated that the truck was following the Finley car at from 40 to 50 feet. Mrs. Finley placed it at "maybe the length of the court room."

Testimony on behalf of Fisk was that the Paulson car, immediately after the contact of the passenger cars, swung into the north lane and onto the north shoulder, then turned and hit the cab part of the tractor (weighing 7,100 pounds) and pushed it so that the tractor extended into the south lane six feet in a southwesterly direction. The possibility, or even probability, of the Paulson car (at whatever speed it was going) making an inverted "U" turn as claimed and causing the damage to the tractor was for the jury. The time consumed by the Paulson car after its contact with the Finley car and its collision with the truck was between one and two seconds.

The three witnesses who were in the tractor testified that it and the trailer at all times before the collision were proceeding westward in the north lane and never got out of it until the time of the collision. Paulson testified that immediately after the contact with the Finley car he turned his car onto the pavement and proceeded eastward straight ahead on the south side of the center line, when suddenly the truck appeared in front of him on the south side of the pavement and the collision at once took place; that he had his car under control and at no time was it on the north part of the pavement. He was corroborated in that regard by his wife and Mrs. Finley. It is undisputed that after the collision the tractor extended into the south lane in a southwesterly direction five to six feet; that Paulson's car was headed in practically the same direction with its front part and wheels across the center line and its rear portion and wheels north of that line. The

Paulson car and the tractor were then eight to ten feet apart. There was paved and shoulder room south of both vehicles so that cars passed by them after the accident. There was not room for cars to pass to the north of the vehicles. The Paulson car was damaged beyond repair; the whole front end was pushed back and badly crushed. The right door of the cab was knocked off and the tractor damaged in and around that portion.

As before indicated, the evidence most favorable to plaintiffs is to be given its full effect. The not-infrequent practice of some counsel for appellants in cases such as this in referring to evidence in their favor has been somewhat indulged in on this appeal. It is of no avail. Undoubtedly the able counsel for appellant in his argument to the jury made the most of all evidence favorable to his client. It was there and not here that such evidence was to be considered and weighed.

Although not in any way so indicating in the charge, unobjected to, the court in its order granting Finley's motion stated:

"And it seems to me that the permissible inferences to be drawn from the evidence, and the only rational conclusion deducible from the situation described by the evidence is, that as the Finley car turned out to pass the car ahead that Fisk's truck, which was following close behind, was also turned out to pass the same car and that the driver did so carelessly and heedlessly without regard to whether the road was clear of oncoming traffic for a sufficient distance ahead to permit such passing in safety, and that such heedlessness constituted negligence which was the direct cause of the injuries to plaintiff complained of."

The jury might have so concluded, although it was not necessary to do so in order rightly to return a verdict for plaintiffs. There was abundant evidence justifying submission of Fisk's negligence and the question of Paulson's contributory negligence to the jury. Cases cited by Fisk in which intentional emergency acts of defendant confronted with impending danger were held justified and hence nonliability found are not in point here. His claim was that the truck was always in the north lane until hit; that it never was intentionally turned out thereof. We have considered the sugges-

tion that the physical facts required as a matter of law a verdict for defendant Fisk. We can find no tenable ground for so concluding. This is clearly a "fact case." The determination thereof by the trier of fact must stand.

We now consider the appeal of plaintiffs from the order granting defendant Finley judgment notwithstanding the verdicts. The evidence shows that in the contact between the Finley car and the Paulson car the left rear part of the former struck the left rear portion of the latter. There was evidence that the left rear fender of the Finley car was pressed down on the left rear wheel; that the left rear bumperette was torn off and that the hub cap was off; whether it was detached at the time of the accident or before does not appear. Undoubtedly the driver of the Finley car was negligent. On the record no appreciable damage was done to either car. Plaintiff Paulson, referring to the contact with the Finley car, testified that the latter "hit us a little. It didn't seem to bother much. * * * The rear end of her car hit us. It didn't swing so much. I had it under control and pulled back onto the road on our own side all right, and the first thing I knew this truck was up ahead and I have no remembrance of anything any further." Several other times he testified that he did not lose control of his car up to the time of the collision with the truck; also, that if the truck had not extended across the black line on his side of the pavement he could have safely continued the journey without any accident. Bertha Paulson testified relative to the contact with the Finley car: "Just for a minute it gave the car a jar, but my husband seemed to be able to straighten the car out right away." She corroborated Paulson's testimony that his car proceeded eastward, always on the south side of the center line of the pavement until it struck the truck. Mrs. Finley also testified that the Paulson car was not "weaving any, but went right straight down the road on its own side." From plaintiffs' own testimony it is clear that the court was justified in ordering judgment for Finley notwithstanding the verdicts. On plaintiffs' own evidence the contact with the Finley car did not cause or contribute to the serious collision that followed.

Affirmed.